**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kent Christensen, *et al.*, | No. CV-23-08509-PCT-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Leann Renee Galliway, *et al.*, | |
| Defendants. | |

At issue is Defendants Leann and Carl Galliway's Motion to Dismiss Second Amended Complaint (Doc. 42, MTD), to which Plaintiffs Kent and Kara Christensen filed a Response (Doc. 44, Resp.) and Defendants filed a Reply (Doc. 45, Reply). Also at issue is Plaintiffs' Motion for Leave to Amend (Doc. 52). The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court will dismiss Carl Galliway as a defendant as well as Counts 4, 5, 6, 7, 8, and 9.

**I.     Background**

In the Second Amended Complaint (Doc. 36, SAC), Plaintiffs allege the following facts. In 1993, Mark and Leota Christensen executed the Christensen Loving Trust (the Trust). (SAC ¶ 3.2.) At the time of execution, the Trust property was to pass equally to the trustors' children, Paul Christensen and Leann Galliway or *per stirpes* to their living descendants upon the death of the last surviving trustor. (SAC ¶¶ 3.4–3.5.) Paul Christensen passed away in December 2013, leaving behind two children, Kent and Kara

1  Christensen—Plaintiffs in the present case. (SAC ¶¶ 3.8, 3.1.) Leota Christensen passed
2  away on May 18, 2015. (SAC ¶ 3.10.) The Trust provides that "upon the death of one of
3  the trustors, the Trust agreement shall not be subject to amendment or revocation as it
4  relates to the Family Trust." (SAC ¶ 3.11.) Despite this, Mark Christensen signed an
5  amendment to the Trust that completely disinherited Paul Christensen and his heirs a day
6  after Leota Christensen died. (SAC ¶ 3.13.) Then in February 2016, Mark Christensen
7  altered his will to disinherit "the heirs of Paul W. Christensen." (SAC ¶ 3.16.) Mark
8  Christensen executed the will with two witnesses present who signed an affidavit stating
9  that they believed Mark Christensen to be of sound mind and body. (Doc. 36-9.) Mark
10 Christensen died on August 20, 2021. (SAC ¶ 3.7.) On December 13, 2021, Plaintiffs'
11 attorney sent a letter to Leann Galliway inquiring about the administration and distribution
12 of the Trust assets. (SAC ¶ 3.17.) Defendants' attorney responded and informed Plaintiffs
13 on January 10, 2022, that they had been "disinherited and removed as beneficiaries of the
14 trust(s)." (SAC ¶ 3.17.) The letter from Defendants' attorney was the first time that
15 Plaintiffs learned about the 2015 changes to the Trust. (SAC ¶ 3.17.) Plaintiffs filed their
16 complaint on July 20, 2023. (Doc. 1.)

17      Plaintiffs additionally allege the following facts that preceded their disinheritance.
18 After Paul Christensen died, Leann Galliway moved across the street from Mark and Leota
19 Christensen and "began inserting herself into their personal, financial and legal affairs" and
20 began developing a "confidential relationship" with them. (SAC ¶ 3.9.) Leann Galliway
21 "facilitated" the signature of Mark Christensen on the amendment to the Trust disinheriting
22 Plaintiffs, and was witnessed by Carl Galliway. (SAC ¶ 3.13.) Leann Galliway also took
23 steps to keep Plaintiffs away from their grandfather despite them having "excellent
24 relationships" with their grandfather previously. (SAC ¶ 3.14.) The isolation was enforced
25 by Leann Galliway on one occasion through means of threatening to file for a restraining
26 order on Plaintiffs when they sought to contact their grandfather. (SAC ¶ 3.14.) Because
27 of Leann Galliway's efforts, Plaintiffs were not informed of their grandfather's death.
28 (SAC ¶ 3.14.) Leann Galliway also transferred real property to several LLCs she owned in

2022. (SAC ¶ 3.18.) These parcels were the Trust's property prior to Mark Christensen's death in August 2021. (SAC ¶ 3.19.)

Plaintiffs have brought suit against Leann and Carl Galliway enumerating nine causes of action: (1) declaratory judgment; (2) breach of fiduciary duty; (3) constructive fraud; (4) tortious interference with a testamentary expectancy; (5) accounting; (6) injunction; (7) constructive trust; (8) disregard of corporate existence of Five Villages, LLC, Blue Himalayan, LLC, and Nevis Day, LLC; and (9) fraudulent concealment. Defendants now move to dismiss all causes of action.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint that pleads facts that are "merely consistent with" liability

does not bridge the gap between possibility and plausibility and grant entitlement to survival on the motion to dismiss. *Iqbal*, 556 U.S. at 678. Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**III.   Analysis**

    **A.   Dismissal of Carl Galliway as a Defendant**

Defendants argue that Carl Galliway should be dismissed as a defendant because he has not been accused of committing any torts, and Oregon does not provide liability for a tort committed solely by one's spouse.[1] The Court agrees. Plaintiffs do not allege that Carl Galliway participated in any of the tortious activity alleged against Leann Galliway. Carl Galliway was allegedly a witness to the signing of the amendment that disinherited Plaintiffs, but this allegation does not show that Carl Galliway actively participated in or authorized the alleged torts. Plaintiffs also fail to cite applicable Oregon law that imputes liability on a spouse because of his partner's tortious activity. This Court will dismiss Carl Galliway as a defendant.

    **B.   Tortious Interference with a Testamentary Expectancy**

Defendants argue that Plaintiffs fail to state sufficient facts to support the elements of a claim of intentional interference with a testamentary expectancy. (MTD at 12.) Oregon recognizes the tort of intentional interference with economic relations, which may include claims involving the intentional interference with a prospective inheritance. *Allen v. Hall*, 974 P.2d 199, 202 (Or. 1999). The elements that the plaintiff must show to prevail on a tortious interference claim under Oregon law are:

---

[1] Oregon law applies to the tort claims in this case because all the alleged tortious conduct occurred in Oregon and the relationships at issue were centered around Oregon. *See Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992).

- 4 -

(1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage); (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages.

*Id.*

Defendants argue that Plaintiffs did not adequately plead the second element, "intentional interference with that relationship or advantage." (MTD at 12.) In response, Plaintiffs guide the Court to multiple paragraphs in the Second Amended Complaint. In these references, Plaintiffs allege that Leann Galliway (1) inserted herself into the personal, financial, and legal affairs of Mark and Leota Christensen; (2) developed a confidential relationship with Mark and Leota Christensen; (3) "facilitated" Mark Christensen's signing of the amendment the day after Leota Christensen's death; (4) kept Plaintiffs away from Mark Christensen by threatening Plaintiffs with a restraining order; and (5) wrongfully converted assets of the Trust to her own use and attempted to hide this by creating multiple LLCs. (SAC ¶¶ 3.9, 3.13–.14, 3.18.) (Resp. at 12–13.) Plaintiffs also point out that they were disinherited from the Trust around the same time as these actions occurred. (SAC ¶¶ 3.15–.16.) (Resp. at 12.)

The relationship at issue in this test is the relationship created by the trust or will. *See Allen*, 974 P.2d at 204. The personal relationship between the beneficiaries and the grandfather is relevant only insofar as it affects the testamentary relationship. *Id.* (finding that intentional interference with the *testamentary relationship* was sufficient to satisfy "intentional interference with that relationship or advantage"); *see also McGanty v. Staudenraus*, 901 P.2d 841, 845 (Or. 1995) (stating the tort is intended to protect parties against interference in their *contracts* from outside parties). The question then is whether the facts alleged lead to a plausible inference that Leann Galliway intentionally interfered with the testamentary relationship between Plaintiffs and their grandfather. The answer

is no. Based on the facts alleged, there is no more than a "sheer possibility" that Leann Galliway committed the tort alleged.

First, the allegations in the complaint that Leann Galliway "inserted herself" into the personal, financial, and legal affairs of Mark and Leota Christensen as well as developed a confidential relationship with them do not show that Defendants interfered with Plaintiffs' testamentary expectancy. These acts do not demonstrate that Leann Galliway exerted any influence on Mark Christensen. Additionally, the creation and use of LLCs do not show interference with Plaintiffs' and Mark Christensen's testamentary relationship. The use of the LLCs could not have been a means by which Defendants interfered with the prospective inheritance because the property transfer to the LLCs occurred after the death of Mark Christensen, and therefore well after the alleged interference.

The allegations that Leann Galliway created barriers between Plaintiffs and their grandfather presents a closer call but again do not show that Defendants intentionally interfered with their testamentary relationship. Leann Galliway's actions may have interfered with the personal relationship between Plaintiffs and their grandfather, but the facts alleged do not show that the actions affected the testamentary relationship. Congruently, the fact that Leann Galliway "facilitated" the signing does not create a reasonable inference that she intentionally interfered with the testamentary relationship. The term "facilitated" is ambiguous and could mean she handed her father a pen, or it could mean that she coerced Mark Christensen to sign the paper. The facts alleged do not create plausibility. Plaintiffs' claim that they were disinherited around this time also does not create plausibility, because alone, the timing of these events does not show Leann Galliway intentionally interfered with Plaintiffs' prospective inheritance.

Plaintiffs also posit that because there may be a presumption of undue influence, the burden shifts to Defendants to prove there was no undue influence. The Court finds this argument unpersuasive for two reasons. First, the cases Plaintiffs cite apply Arizona law, and this cause of action is governed by Oregon law. Second, this is not an undue influence

1 claim—and Plaintiffs fail to show that this burden shifting exists under an intentional
2 interference with economic relations tort cause of action.

3 For the foregoing reasons, Plaintiffs' cause of action for tortious interference with
4 a testamentary expectancy is dismissed for failure to allege sufficient facts to support a
5 cognizable legal theory.

### C.     Fraudulent Concealment

Defendants argue that Plaintiffs failed to state sufficient facts to support the elements of the claim of fraudulent concealment. (MTD at 15.) Fraudulent concealment may be predicated on a failure to make a full and fair disclosure of relevant facts demanded as a result of the parties' underlying fiduciary relationship. *In re Conduct of Brown*, 956 P.2d 188, 196 (Or. 1998).

Based on the facts alleged, the Trust was irrevocable at the time of the first amendment, rendering the amendment void. This leads the Court, for the purposes of this motion, to assume that Plaintiffs were rightful beneficiaries of the Trust at the time of the alleged fraudulent concealment. The material question then is: Did Leann Galliway owe Plaintiffs a fiduciary duty because of their co-beneficiary relationship?

Plaintiffs do not cite any Oregon law that establishes fiduciary duties between co-beneficiaries of a trust or otherwise. Because Plaintiffs failed to show a fiduciary relationship between Defendants and Plaintiffs, the complaint does not establish sufficient facts to support the elements of the claim of fraudulent concealment.

### D.     Accounting

Plaintiffs bring a claim for an accounting, which Defendants move to dismiss as an incognizable claim. (MTD at 13.) An accounting is an equitable remedy available to a court under specific circumstances. *Brown's Indus., Inc. v. Snow Mountain Pine Co.*, No. CIV. 87-1119-FR, 1989 WL 142411 (D. Or. Oct. 26, 1989) (citing *Flaherty v. Bookhultz*, 291 P.2d 221, 223–24 (Or. 1956)). A party may compel an accounting when, among other elements, "an accounting is incidental to other equitable relief." *Swango v. Nationstar Sub1, LLC*, 292 F. Supp. 3d 1134, 1146 (D. Or. 2018). To the extent that Plaintiffs plead

this as a cause of action, it is dismissed, but the Court will treat it as a request for an equitable remedy.

### E. Injunction

Likewise, "An injunction is a remedy, not a separate claim or cause of action." *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2s 1183, 1201 (E.D. Cal. 2010). Moreover, any request for a court order, such as an injunction or restraining order under Rule 65, must be made by a motion under Rule 7. Fed. R. Civ. P. 65; 7. Plaintiffs do not respond to the argument against the "Injunction" cause of action. For the foregoing reasons, the Court will dismiss this cause of action.

### F. Disregard of Corporate Existence of Five Villages, LLC, Blue Himalayan, LLC, and Nevis Day, LLC

The relief requested, presented as a separate cause of action, is potential relief granted to a party who has prevailed on a breach of the duty of loyalty claim against a trustee. Or. Rev. Stat. § 130.655(2). The cause of action will be dismissed. It is not a legally cognizable theory and will be treated as a request for a remedy for the second cause of action–breach of fiduciary duty.

### G. Constructive Trust

Similar to the above, constructive trust is an equitable remedy, available to divest a party who has been unjustly enriched with property. *Briggs v. Lamvik*, 255 P.3d 518, 526 (Or. Ct. App. 2011) (citing *Tupper v. Roan*, 243 P.3d 50, 56–57 (Or. 2010)); *see Brown v. Brown*, 136 P.3d 745, 752 (Or. Ct. App. 2006) ("A constructive trust is merely a procedural device to which the courts resort in order to effect restitution of property.") (internal quotation marks omitted). The Court will treat it as such and will dismiss the claim of constructive trust.

### H. Declaratory Judgment and Breach of Fiduciary Duty

Defendants argue that the statute of limitations bars the claims of declaratory judgment and breach of fiduciary duty. Defendants do not argue for dismissal of these claims on any other grounds. Under Arizona's choice of law rules, Arizona statutes of

1 limitation would apply here. *See Jackson v. Chandler*, 61 P.3d 17, 18 (Ariz. 2003). Defendants provide two potentially applicable limitation periods for declaratory judgment: one of two years for breach of trust, A.R.S. § 14-11005(C)(2) and one of four years as a "catch all" civil litigation statute of limitations, A.R.S. § 12-550. (MTD at 9–10.) The limitation period for breach of fiduciary duty is two years. *Coulter v. Grant Thornton, LLP*, 388 P.3d 834, 838 (Ariz. Ct. App. 2017).

In Arizona, a cause of action accrues, and the limitations period begins to run, when the plaintiff becomes aware of information that would put a reasonable person on notice to investigate whether a claim exists. *Walk v. Ring*, 44 P.3d 990, 995 (Ariz. 2002). Here, Plaintiffs did not discover the termination of their interest in the trust until they learned of their removal as trust beneficiaries from Defendants' attorney on January 10, 2022. Defendants argue Plaintiffs should have known of their interest's termination because of their father's death. (Reply at 4.) The Court finds this argument unpersuasive. Defendants do not explain why Plaintiffs' father's death should have warned them of a potential revocation. A death of an individual with an interest in the trust, especially when there is language in the trust to account for the death of the beneficiary, is insufficient information to put a reasonable person on notice to investigate whether the trust would be revoked. Therefore, the limitation period began to run upon the discovery of the alteration of the Trust. For the same reasons, the breach of fiduciary duty limitation period also began to run upon the discovery of the alteration of the Trust.

Consequently, neither of the proposed statutes of limitation for declaratory judgment bar the claim being brought here because Plaintiffs discovered the termination of their interest on January 10, 2022, and then filed their complaint on July 20, 2023—within both of the potentially applicable limitation periods. Defendants also provide a statute of limitation for challenging the validity of a revocable trust of one year after the settlor's death, or four months after the trustee sent the person a copy of the trust instrument and notice. A.R.S. § 14-10604. However, A.R.S. § 14-10604 is not applicable here because it specifically regards a revocable trust and the allegation in the present complaint is that the

Trust was *irrevocable*. Accordingly, the breach of fiduciary duty claim was brought within the statute of limitations because it was brought within two years of the discovery of the alleged breach. Because these actions were commenced within the statutory limitation periods, the causes of action for declaratory judgment and breach of fiduciary duty are not time barred and the Court will deny Defendants' motion to dismiss these claims.

### I. Constructive Fraud

Defendants argue that the constructive fraud claim is barred by the statute of limitations. Under Arizona law, fraud claims are limited by a three-year statute of limitations. A.R.S. § 12-543. For causes of action on the ground of fraud or mistake, the claim does not "accrue" for the purposes of the statute of limitations until the discovery of the fraud by the aggrieved party. A.R.S. § 12-543(3). For the same reasons the Court discusses above, it concludes Plaintiffs discovered the constructive fraud on January 10, 2022. Plaintiffs subsequently filed their complaint on July 20, 2023, well within the three-year limitation period. The constructive fraud claim is thus timely.

### IV. Conclusion

Plaintiffs have not sufficiently alleged facts against Carl Galliway and therefore he must be dismissed from this suit. Tortious interference with a prospective inheritance and fraudulent concealment will be dismissed for failure to state a claim. An accounting, injunction, constructive trust, and disregard of LLCs are remedies and therefore must be dismissed as causes of action—but will be treated as requests for equitable remedies. Declaratory judgment, breach of fiduciary duty, and constructive fraud are not barred by the applicable statutes of limitations.

If a defective complaint can be cured, the plaintiffs are entitled to amend the complaint before the action is dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Therefore, the Court will allow Plaintiffs to file a Third Amended Complaint to cure the defects explained in this Order. In doing so, Plaintiffs may remove the accounting, constructive trust, and disregard of LLCs "causes of action" and seek them as remedies instead. Plaintiffs may also clarify the amount in controversy to ensure the Court's

jurisdiction, as explained in Plaintiffs' Response to Order to Show Cause (Doc. 51) and Motion for Leave to Amend (Doc. 52). The Court will deny as moot Plaintiffs' Motion for Leave to Amend (Doc. 52).

**IT IS THEREFORE ORDERED** granting in part Defendants' Motion to Dismiss Second Amended Complaint (Doc. 42) for failing to state a claim on cause of action 4, 5, 6, 7, 8, 9 and as regards Carl Galliway. The Motion is denied in all other respects.

**IT IS FURTHER ORDERED** granting Plaintiffs leave to file a Third Amended Complaint within 21 days of the date of this Order.

**IT IS FURTHER ORDERED** denying as moot Plaintiffs' Motion for Leave to Amend (Doc. 52).

Dated this 14th day of June, 2024.

Honorable John J. Tuchi
United States District Judge