WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kent Christensen and Kara Christensen, | No. 3:23-cv-08509-KML |
| Plaintiffs, | **ORDER** |
| v. | |
| Leann Renee Galliway, | |
| Defendant. | |

Before May 2015, siblings Kent and Kara Christensen were the beneficiaries of a trust established by their grandparents. In May 2015, defendant Leann Galliway allegedly convinced their grandfather to alter the trust such that Kent and Kara were no longer beneficiaries. Kent and Kara filed this suit alleging Galliway's actions constituted, among other things, tortious interference with their testamentary expectancies created by the trust. Galliway seeks dismissal of that claim but the amended complaint alleges sufficient facts to plausibly conclude that Galliway wrongfully interfered with Kent and Kara's testamentary expectancies. The motion to dismiss the fourth cause of action is therefore denied.

**I.     Background**

This case involves three generations of a family: Mark and Leota Christensen, their children Paul Christensen and Leann Galliway, and Paul's two children, Kent and Kara. In 1993, Mark and Leota executed the Christensen Loving Trust (the "Trust"). As originally drafted, the Trust provided that the trust property would pass equally to the trustors' children, Paul and Galliway, or if either Paul or Galliway predeceased their parents, the

property would pass to Paul's or Galliway's living descendants. (Doc. 58 ¶¶ 3.4–3.5.) The terms also stipulated that the Trust would become irrevocable upon the death of either trustor. (Doc. 58 ¶ 3.11.)

One day after his wife Leota died, Mark signed an amendment to the Trust completely disinheriting Kent and Kara. (Doc. 58 ¶ 3.13.) The amendment named Galliway as the sole beneficiary and her husband, Carl Galliway, as a successor trustee. (Doc. 58 ¶ 3.13.) Carl Galliway also acted as a witness to the amendment. (Doc. 58 ¶ 3.13; Doc. 36-13 at 6.) A few months later, Mark similarly altered his Last Will and Testament, disinheriting Kent and Kara and granting his entire estate and Trust property to Galliway. (Doc. 58 ¶ 3.16.)

Kent and Kara allege that Galliway caused the purported Trust amendment. The day after her mother's death, Galliway and her husband drove 90-year-old Mark to the law office of Robert C. Custis in Salem, Oregon, to execute the Trust amendment. (Doc. 58 ¶ 3.13.) Mark did not maintain "any prior professional relationship with Mr. Custis," and lived 60 miles away from the law office. (Doc. 58 ¶ 3.13.) About a year later, Mark granted Galliway partial ownership in some Trust property. (Doc. 58 ¶ 3.16; Doc. 36-11 at 1.) Mark did not inform Kent and Kara of these changes. Kent and Kara only learned of the Trust amendment after their attorney contacted Galliway to inquire about administration and distribution of the Trust assets. (Doc. 58 ¶ 3.18.)

Kent and Kara argue that these actions were part of a larger pattern of behavior. After Paul died, Galliway moved from Washington to a house across the street from Mark and Leota in Oregon and "began inserting herself into her parents' personal, financial and legal affairs." (Doc. 58 ¶ 3.9.) Kent and Kara allege that while they had historically enjoyed "excellent relationships" with Mark, Galliway "took increasingly aggressive actions to keep them away from their grandfather," including threatening Kent and Kara with a restraining order when they sought to contact Mark. (Doc. 58 ¶ 3.14.)

Kent and Kara sued Galliway bringing, among other causes of action, a claim for tortious interference with a testamentary expectancy. (Doc. 1.) The court granted

Galliway's motion to dismiss this claim from the second amended complaint with leave to amend because the allegation that Galliway "facilitated" Mark's signing was too ambiguous to meet the plausibility standard. (Doc. 55 at 6.) Kent and Kara filed an amended complaint alleging additional facts in support of this claim, and Galliway has again moved to dismiss. (Docs. 58, 61.)

## II.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id*. at 663–64.

## III.   Analysis

Galliway argues that Kent and Kara fail to state a claim for tortious interference with a testamentary expectancy. The elements of this claim are:

> (1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage); (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages.

*Allen v. Hall*, 974 P.2d 199, 202 (Or. 1999). Galliway's first motion to dismiss argued that Kent and Kara did not adequately plead the second element, "intentional interference with that relationship or advantage." (Doc. 23 at 8.) Although less explicit than her earlier motion, Galliway again appears to claim that Kent and Kara do not plead facts sufficient to meet the second element. (Doc. 61 at 3–4.) Oregon courts have found this element

satisfied where plaintiffs pleaded factual allegations showing that the decedent planned to bequeath assets to plaintiffs and that defendants "took steps to prevent that eventuality." *See Allen*, 974 P.2d at 204 (finding defendants' actions to stop decedent from speaking with a lawyer to change his will met the second element).

In their third amended complaint, Kent and Kara allege additional facts to support their claim. They add that Galliway and her husband drove Mark to the lawyer's office for the purpose of executing the Trust amendment. (Doc. 58 ¶ 3.13.) Galliway's husband acted as a witness to the same amendment that made him a successor trustee. (Doc. 58 ¶ 3.13.) This amendment "completely disinherit[ed]" Kent and Kara, breaking with Mark and Leota's decades-long designation of Paul and his descendants as beneficiaries. (Doc. 58 ¶¶ 3.13, 3.15.) Kent and Kara also add that Mark "had not established any prior professional relationship with Mr. Custis, whose law office was sixty miles away from his home in Harrisburg[, Oregon]." (Doc. 58 ¶ 3.14.)

These facts supplement Kent and Kara's allegations in the earlier complaint, notably, Galliway's relocation to Oregon after her brother's death; her "increasingly aggressive actions to keep [Kent and Kara] away from their grandfather," including "threaten[ing] them with a restraining order" if they attempted to contact him; and the grant of partial ownership to Galliway in Trust property approximately a year after Mark amended the Trust. (Doc. 58 ¶¶ 3.9, 3.14, 3.16.) These facts taken together permit the "reasonable inference" that Galliway intended to interfere with Kent and Kara's testamentary relationship rather than their personal relationship. *Iqbal*, 556 U.S. at 678.

Galliway argues her knowledge that Mark intended to amend his Trust and Mark's lack of any relationship with the lawyer is not "evidence" that she "intended anything nefarious." (Doc. 61 at 3.) But at this stage, when construed in the light most favorable to them, Kent and Kara's allegations "need only 'plausibly suggest an entitlement to relief.'" *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681). Drawing on the court's "experience and common sense," it is at least plausible that Galliway intended to interfere with Kent and Kara's testamentary relationship when, the day after

his wife died, she drove her 90-year-old father 60 miles away from his home to a lawyer with whom he had no professional relationship to sign papers disinheriting his grandchildren, witnessed by her husband who was one of the two people who stood to benefit the most. *Iqbal*, 556 U.S. at 664.

Galliway hints that she may only have effectuated Mark's own wishes to distance himself from Kent and Kara. (Doc. 67 at 3.) But Kent and Kara's "complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff[s'] explanation is *im*plausible." *Starr*, 652 F.3d at 1216. Galliway's passing reference to Mark's possible intent does not meet this standard. Kent and Kara do not need to demonstrate that their claims are "true or even probable." *Id*. at 1217. Rule 8(a) "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Twombly*, 550 U.S. at 556. Kent and Kara's additional allegations satisfy this standard.

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 61) is **DENIED**.

Dated this 30th day of August, 2024.

_____
Honorable Krissa M. Lanham
United States District Judge